**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

QUANTICO TACTICAL, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

REDACTED VERSION

Case No. _____ 20-120 C

Judge _____

█████████████████

## **COMPLAINT**

1.     Quantico Tactical, Inc. ("Quantico") protests the actions of the Defense Logistics Agency ("DLA") in connection with Solicitation No. SPE8EJ-18-R-0001 ("RFP") for the Special Operations Equipment ("SOE") Tailored Logistics Support ("TLS") Program. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

2.     The SOE TLS Program provides for multiple award indefinite delivery, indefinite-quantity contracts for special operations equipment.  Quantico is one of the current six incumbent contractors in the ongoing SOE TLS Program, and is one of DLA's top performing contractors based on objective metrics.  Quantico has had consecutive on-time SOE TLS delivery rates of ███████████████████████████████████████████████—far

████████████████████

exceeding the contractual 90% requirement and exceeding the on-time delivery rate of any other SOE TLS contractor.  Due to its outstanding performance, DLA has designated Quantico as one of its most exceptional suppliers.  DLA recently recognized Quantico as one of its twelve highest performing contractors among all of DLA's contracts—not just in the SOE TLS program—under the Superior Supplier Incentive Program ("SSIP").

3.      The present RFP renews the SOE TLS program—again DLA is seeking the same type of arrangement with multiple awardees which compete for each order issued under that program.  Because the new SOE TLS contracts will utilize the same approach as the prior ones, DLA identified Past Performance as, far and away, the most important evaluation factor for the RFP.  Given the multiple award structure of the SOE TLS program in which fair and reasonable prices are achieved by competition at the order level, DLA's stated concerns in the RFP focused on whether offerors had previously demonstrated the ability to quickly issue quotes for any request placed by an agency, and meet on-time delivery requirements.  As DLA's objectively best supplier under the current SOE TLS program based on these metrics, Quantico was well-positioned for the next SOE TLS program.

4.      ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████  ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████
████████████████████████████████████████████████████████
████████████████████ .

5.     ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████

6.     ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████

7.     ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████

8.     ██████████████████████████████████
████████████████████████████████████████████████████████

9. ███████████████████████████████████████████████████

10. ███████████████████████████████████████████████████

Quantico filed a bid protest before the Government Accountability Office ("GAO") on December 23, 2019, which raised these issues. *See* Ex. 1 (GAO Bid Protest, B-418369.1). In response, DLA objected to every single document request submitted by Quantico and did not provide the information necessary for Quantico to pursue its bid protest on these issues. For example, DLA refused to provide detailed evaluation materials such as price calculations, the proposals of any other offeror other than Quantico, and documents related to Quantico's ████████████████████████. Quantico objected repeatedly to the paucity of DLA's document production during the GAO process. Quantico is thus pursuing its bid protest before

████████████████████████

this Court because it has become clear that it will not receive required documents or be able to litigate its claims—as is its right—related to the SOE TLS procurement before the GAO.

11.      Based on these and other reasons, Quantico submits that DLA's actions were arbitrary, capricious, an abuse of discretion, and contrary to law.  *See* 28 U.S.C. § 1491(b)(4) (incorporating by reference 5 U.S.C. § 706).  Accordingly, Quantico respectfully requests that the Court grant appropriate relief including a permanent injunction ordering DLA to: ████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████

## PARTIES

12.      Quantico is a corporation organized under the laws of North Carolina with its principal offices located at 9796 Aberdeen Rd., Aberdeen, NC 28315.  Quantico is a leading provider of equipment for military and federal agencies via its extensive government contracts, and is an incumbent contractor under the current TLS contract with an exemplary past performance record of on time deliveries.  Quantico is also a major provider of weapons and tactical gear to state and local law enforcement agencies.

13.      Defendant is the United States of America, acting by and through the Department of Defense and the Defense Logistics Agency, both agencies of the United States government.  This Complaint may refer to the Defendant as the "United States," "Defendant," "Defense Logistics Agency," or "DLA."  DLA issued the RFP and violated federal acquisition law in connection with this procurement.

**JURISDICTION**

14.     Jurisdiction in this Court is proper under 28 U.S.C. § 1491(b). Quantico alleges that an Executive Department of the United States Government acted in a manner that is arbitrary, capricious, and in violation of one or more statutes or regulations governing this procurement, including 10 U.S.C. § 2305, 48 C.F.R. § 3.101-1, 48 C.F.R. § 15.304, 48 C.F.R. § 15.305, and 48 C.F.R. § 15.306.

15.     The Court of Federal Claims has exclusive jurisdiction over objections to "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

16.     Quantico is an "interested party" under 31 U.S.C. § 3551(2)(A) because it is an actual offeror whose direct economic interest has been affected by DLA's decision ███████ ████████████████████████████████████████████████. Quantico is more than capable of performing the SOE TLS contract and fully intends to continue to compete for and perform this work if permitted.  Quantico also has competed for this type of work in prior DLA competitions, and currently provides similar services to DLA as one of the current SOE TLS contractors as well as the TLS Program for Fire and Emergency Services.  Quantico's direct economic interests are therefore affected by any determination by DLA to award this work to another offeror.

**I.**
**FACTUAL BACKGROUND**

**A.**     ████████████████████████████████████████

**1.     Quantico's Leading Role in SOE TLS Contracts**

17.     Quantico has a history of exceptional performance under SOE TLS contracts where it is currently one of six contract holders for the TLS program.

███████████████████████████████

18. Under the current SOE TLS program, Quantico has fulfilled more than ██

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

19. ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████

20. ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

21. In addition to the exceptional ratings, DLA recognized Quantico as one of its twelve highest performing contractors among all of DLA's contracts—not just in the SOE TLS program— under the Superior Supplier Incentive Program ("SSIP"), which was "designed to recognize

████████████████████████

higher-performing industry partners based on past performance evaluations, with the intent of incentivizing superior performers." Ex. 2; Ex. 3.  The head of DLA's Acquisitions Directorate also explained that SSIP provided DLA "with an opportunity to highlight contractors who consistently perform well and are DLA's strong partners to provide our warfighters with the food, clothing, fuel, repair parts and other commodities they need to perform their missions effectively."  Ex. 2. Quantico was the most recent SOE TLS supplier to be honored as one of DLA's 12 top Gold Award suppliers under the SSIP.  *Id.*

22.      In recognition of its performance history, DLA awarded a new bridge SOE TLS contract (No. SPE8EJ-19-D-0006) to Quantico in March 2019.  Also in March 2019, DLA awarded Quantico a similar TLS contract for Fire & Emergency Services Equipment (Contract No. SPE8EH-19-D-0018).  ████████████████████████

████████████████████████████████████

2.      ████████████████████████

23.      ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

24. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

25. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██

26. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



**3.**

28.



**B.**     **The SOE TLS RFP And Its Evaluation Factors**

32.     On November 16, 2018, DLA issued the RFP for the current SOE TLS procurement with an original proposal submission deadline of January 8, 2019.   After multiple amendments,

the closing date was extended until January 18, 2019.  The RFP provided for the award of multiple

SOE TLS contracts with a minimum of at least three winning offerors.    Moreover, the RFP was

set-aside as a "Total Small Business Set-Aside" procurement.

33.    While the RFP did not require discussions, DLA reserved "the right to conduct

discussions if later determined by the Contracting Officer to be necessary."  The RFP explained

that a competitive range determination would only be made if DLA intends to engage in

discussions: "If required because discussions will be conducted, the Contracting Officer will make

a competitive range determination based on these evaluations.  Unless awards are made on the

basis of initial proposals, written and/or oral discussions will be conducted with all offerors in the

competitive range."   In other words, once DLA down-selected proposals, it had to conduct

discussions with all of the remaining offerors.

34.    The RFP further stated:  "Awards will be made to offerors whose proposals are

most advantageous to the Government considering non-price evaluation factors and price."  The

source selection process is to be performed using a "Best Value Tradeoff" procedure. The RFP

made clear that "the non-price factors [will be] significantly more important than price."   In

particular, the RFP set forth the following non-price evaluation factors and subfactors in

descending order of importance:

> **NON-PRICE EVALUATION:**
> The following evaluation factors/subfactors shall be used to evaluate offers:
>
>       I. Past Performance  - Confidence Assessment
>       II. Technical Merit
>           (a) Product Sourcing
>           (b) Distribution

35.    For the Past Performance evaluation factor, the RFP provided that the "Confidence

Assessment" for each offeror would be rated as either "Substantial Confidence, Satisfactory

Confidence, Limited Confidence, No Confidence, or Neutral Confidence."  In particular, offerors

were instructed to provide information regarding the offerors' "top three (3) highest dollar value supply contracts performed at some point within the five years preceding the initial solicitation closing date for Special Operational Equipment."   The individual contracts were to be evaluated for relevancy based on "recency, type and variety of products supplied, annual dollar value, length, volume of delivery orders, and number of delivery points."   The contracts' relevancy were to be rated as either "Very Relevant, Relevant, Somewhat Relevant, or Not Relevant." The RFP's only basis for not considering a contract was a finding that the contract was "not relevant."

36.     In addition to relevancy, the individual contracts were to be rated based on quality of performance considering:  "the degree to which the offeror met the terms of delivery, quality standards, and was able to achieve customer satisfaction in its performance of these past contracts." For performance, the individual contracts were to be rated as either "Outstanding, Good, Acceptable, Marginal, or Unacceptable." The RFP does not provide for any individual performance rating of "Neutral."

37.     For the evaluation of Technical Merit, the RFP provided that two separate subfactors would be used:  (a) Product Sourcing and (b) Distribution. DLA was to provide a rating for each subfactor as either "Outstanding, Good, Acceptable, Marginal or Unacceptable."

38.     For Product Sourcing, the RFP provided for a review of "the degree to which the offeror's plan meets the requirements, indicates an adequate approach and understanding of those requirements and the risk of unsuccessful performance."  The RFP set forth two specific metrics with which it was concerned:  a 90% Quote Rate Performance Metric and a 95% Fill Rate Metric. The RFP also described the following six elements to be considered in the evaluation:  "the purchasing system clear lines of authority (Element 1), regular audits and recurring training (Element 2), ample suppliers (Element 3), electronic systems (Element 4), accurate system of

documentation (Element 5), and clear guidance and communication to subcontractors (Element 6)."

39.     For the Distribution subfactor, the RFP provided that DLA would review "the degree to which the offeror's plan meets the requirements, indicates an adequate approach and understanding of those requirements and the risk of unsuccessful performance."  Specifically, DLA was to review "the offeror's plan to meet the delivery requirements including routine, urgent, emergency orders, and consolidated bill of material requirements and plan to meet the on-time delivery metric of 90% and ensure control over subcontracting."

40.     The RFP also provided for evaluating offeror's pricing proposals.  Pricing proposals were to be reviewed to ensure that the offerors proposed pricing for a minimum of 90% of the line items in the Price Evaluation List ("PEL") or acceptable alternatives and proposed pricing for the Incidental Service Scenario.  The prices would then be reviewed using price analysis methods as well as reviewing for balance.  A Total Evaluated Price was to be assessed based on the following formula:  "Overall Aggregate Ceiling Price of Commonly offered PEL Line Items and Acceptable Alternates + Total Price for the Incidental Service = Total Evaluated Price."

**C.     Quantico's Proposal in Response to the SOE TLS RFP**

41.     In its Proposal in response to the current SOE TLS RFP, Quantico explained its exceptional past performance as described in ¶¶ 17–22 of this Complaint.

42.     As a short summary, Quantico



43.

**II.**

**A.**

44.     The RFP provided that the individual contract Past Performance ratings would range between "Outstanding, Good, Acceptable, Marginal, or Unacceptable," and that individual contracts would be assessed as either "Very Relevant, Relevant, Somewhat Relevant, or Not Relevant."  DLA explained that the "Neutral rating [was] not treated favorably or unfavorably with respect to the Confidence Assessment."

███████████████████████████

45.    ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████

46.    ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

47.    ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

48.    The RFP made clear that "the non-price factors [will be] significantly more important than price," and the Past Performance Confidence Assessment would be the most



important aspect of DLA's evaluation.

49.

B.

50.

51.



52.

53.

54.



55.

56.



57. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████

58. ████████████████████████████████



59.

2.

60.

61.

62.



63.

C.

65.





72. █████████████████████████████████████

73. █████████████████████████████████████

76.

████████████ ████████████

77.   ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

78.   ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████



79.   ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



**2.**

81.

*82.*

83.



87.     In this procurement, DLA stated "the non-price factors [are] significantly more important than price."  Moreover, DLA stated:  "Factor I [Past Performance] is more important than Factor II [Technical Merit]."  DLA also stated that it would conduct discussions with all remaining offerors after establishing the competitive range.





**III.**

93.

94.

**IV.**

95.

96.     Under the RFP, DLA was to evaluate prices "utilizing accepted price analysis methods" including "an analysis to determine if prices are unbalanced."  This analysis was to include comparisons of "offers to each other, comparison with market research and comparison with prior procurements."  Moreover, the RFP required DLA to calculate the price for each offer as follows:

> The Total Evaluated Price is based on the following formula: Overall Aggregate Ceiling Price of Commonly offered PEL Line Items and Acceptable Alternates + Total Price for the Incidental Service = Total Evaluated Price.

The RFP defined Common Line Items as items "where all offerors submitted a Ceiling Price . . . or Acceptable Alternate."

97.

98.



99.

**V.**

100.



101.

102.



104.

105.

**CLAIMS FOR RELIEF**

**COUNT I**

106.    Quantico incorporates by reference paragraphs 1–105 of the Complaint as if fully set forth herein.

███████████████████████

107.    48 C.F.R. § 15.305(a) states: "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."

108.    Similarly, 10 U.S.C. § 2305(b)(1) requires: "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."

109.    DLA acted arbitrarily, capriciously, and contrary to law when it evaluated Quantico's Proposal including by:



110.    DLA's failure to properly evaluate Quantico's Proposal in a reasonable manner prejudiced Quantico because it denied Quantico the opportunity to fairly compete for the award of the contract.

111.    Quantico has no adequate remedy at law to challenge DLA's action.

112.    The public interest will be served by proper enforcement of procurement law.

███████████████████████████████████

113.    DLA will not be prejudiced by complying with procurement laws.

## COUNT II

███████████████████████████████████████████████

114.   Quantico incorporates by reference paragraphs 1–113 of the Complaint as if fully set forth herein.

115.    48 C.F.R. § 15.305(a) states: "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."

116.    Similarly, 10 U.S.C. § 2305(b)(1) requires: "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."

117.    Additionally, agencies must "award a contract . . . considering only cost or price and the other factors included in the solicitation."  10 U.S.C. § 2305(b)(4)(C).

118.    DLA acted arbitrarily, capriciously, and contrary to law when it evaluated Quantico's Proposal including by:

    a.   ████████████████████████████████████

    ████████████████████████████████████████

    ████████████████████████████████

119.    DLA's failure to properly evaluate Quantico's Proposal according to the terms of the RFP prejudiced Quantico because it denied Quantico the opportunity to fairly compete for the award of the contract.

120.    Quantico has no adequate remedy at law to challenge DLA's action.

121.    The public interest will be served by proper enforcement of procurement law.

122.    DLA will not be prejudiced by complying with procurement laws.

36

███████████████████████████

## COUNT III

███████████████████████████

123.    Quantico incorporates by reference paragraphs 1–122 of the Complaint as if fully set forth herein.

124.    In its evaluation of Past Performance, 48 C.F.R. § 15.305(a)(2) states that agencies must consider "currency and relevance of the information, source of the information, context of the data, and general trends in contractor's performance."

125.    When an agency issues an RFP, 10 U.S.C. § 2305(a)(2)(A) requires that the agency "at a minimum" include "a statement of . . . the relative importance assigned to each of [the] factors and subfactors."

126.    In this procurement, DLA stated "the non-price factors [are] significantly more important than price."    Moreover, DLA stated:  "Factor I [Past Performance] is more important than Factor II [Technical Merit]."

127.    48 C.F.R. § 15.305(a) states: "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."

128.    Similarly, 10 U.S.C. § 2305(b)(1) requires: "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."

129.    DLA acted arbitrarily, capriciously, and contrary to law when ████████████
████████████████████████████████████████████████
████████████████████████

██████████████████████████████

130.    DLA's failure to properly evaluate Quantico's Proposal according to the terms of the RFP prejudiced Quantico because it denied Quantico the opportunity to fairly compete for the award of the contract.

131.    Quantico has no adequate remedy at law to challenge DLA's action.

132.    The public interest will be served by proper enforcement of procurement law.

133.    DLA will not be prejudiced by complying with procurement laws.

### COUNT IV

██████████████████████████████
███████████████████

134.    Quantico incorporates by reference paragraphs 1–133 of the Complaint as if fully set forth herein.

135.    48 C.F.R. § 15.304(b) states: "Evaluation factors and significant subfactors must . . . [s]upport meaningful comparison and discrimination between and among competing proposals."

136.    Similarly, 10 U.S.C. § 2305(a)(1)(A)(i) requires that a soliciting agency, "specify the agency's needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement."

137.    ███████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████

138.    ███████████████████████████████
███████████████████████████

139.    Quantico has no adequate remedy at law to challenge DLA's action.

███████████████████████████████████████

140.    The public interest will be served by proper enforcement of procurement law.

141.    DLA will not be prejudiced by complying with procurement laws.

## COUNT V

███████████████████████████████████████

142.    Quantico incorporates by reference paragraphs 1–141 of the Complaint as if fully set forth herein.

143.    If a contracting agency decides to establish a competitive range, 48 C.F.R. § 15.306(c)(1) states: "Based on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals, unless the range is further reduced for purposes of efficiency pursuant to paragraph (c)(2) of this section."

144.    DLA   decision   ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████

145.    Quantico has no adequate remedy at law to challenge DLA's action.

146.    The public interest will be served by proper enforcement of procurement law.

147.    DLA will not be prejudiced by complying with procurement laws.

## COUNT VI

███████████████████████████████████████

148.    Quantico incorporates by reference paragraphs 1–147 of the Complaint as if fully set forth herein.

149.    48 C.F.R.  15.306(b)(1)(i) mandates that agencies conduct communications before establishment of the competitive range with "offerors whose past performance information is the determining factor preventing them from being placed within the competitive range.  Such communications shall address adverse past performance information to which an offeror has not had a prior opportunity to respond."

150.    48 C.F.R.  15.306(b)(3)(i) permits agencies to conduct communications to address: "Ambiguities in the proposal or other concerns (e.g., perceived deficiencies, weaknesses, errors, omissions, or mistakes (see 14.407))."

151.    48 C.F.R.  15.306(b)(1)(ii) states that communications "[m]ay be held with those offerors (other than offerors under paragraph (b)(1)(i) of this section) whose exclusion from, or inclusion in, the competitive range is uncertain."

152.    The RFP specifically required DLA to hold discussions with all offerors within the competitive range:  "If required because discussions will be conducted, the Contracting Officer will make a competitive range determination based on these evaluations.  Unless awards are made on the basis of initial proposals, written and/or oral discussions will be conducted with all offerors in the competitive range."  RFP at 59

153.    ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

154.    ████████████████████████████████████████████████████
████████████████████████████████████████████████████████

155. ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

156.   Quantico has no adequate remedy at law to challenge DLA's action.

157.   The public interest will be served by proper enforcement of procurement law.

158.   DLA will not be prejudiced by complying with procurement laws.

## COUNT VII

████████████████████

159.   Quantico incorporates by reference paragraphs 1–158 of the Complaint as if fully set forth herein.

160.   48 C.F.R. § 3.101-1 states: "Government business shall be conducted in a manner above reproach and, except as authorized by statue or regulation, with complete impartiality and with preferential treatment for none.  Transactions relating to the expenditure of public funds require the highest degree of public trust and an impeccable standard of conduct."

161.   48 C.F.R. § 15.305(a) states: "An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation."

162.   Similarly, 10 U.S.C. § 2305(b)(1) requires: "The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."

163.    DLA acted arbitrarily, capriciously, and contrary to law when it ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

164.    DLA's failure to properly evaluate Quantico's Proposal according to the terms of the RFP prejudiced Quantico because it denied Quantico the opportunity to fairly compete for the award of the contract.

165.    Quantico has no adequate remedy at law to challenge DLA's action.

166.    The public interest will be served by proper enforcement of procurement law.

167.    DLA will not be prejudiced by complying with procurement laws.

## COUNT VIII

### INJUNCTIVE RELIEF

168.    Quantico incorporates by reference paragraphs 1–167 of the Complaint as if fully set forth herein.

169.    Quantico has been damaged or will be damaged by the acts of DLA.

170.    If DLA is permitted to continue to engage in unlawful acts, Quantico will continue to be denied its legal right to fairly compete for the award of the contract.

171.    Quantico has no adequate remedy at law to challenge DLA's action.

172.    The public interest will be served by proper enforcement of procurement laws.

173.    DLA will not be prejudiced by complying with procurement laws.



## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against the United States and further requests:

A. ███████████████████████████████████████

████████████████████████████████████████

███ ██████████████████████████████████

███

███ ██████████████████████████████████

██████

███ ██████████████████████████████████

█████████████████████████

███ ████████████████████████████████

███ ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

███ ████████████████████████████████

████████████████████████████████████████

████████████████████████████

H.   The award of protest costs, including legal fees, and such other relief as appropriate.

I.   Any other relief that this Court deems just and proper under the circumstances.


Dated this 3rd day of February 2020.

Respectfully submitted,

Of Counsel:
Kyle R. Jefcoat
Dean W. Baxtresser
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004
(202) 637-2200
(202) 637-2201 (fax)
kyle.jefcoat@lw.com
dean.baxtresser@lw.com

   /s/  David R. Hazelton
David R. Hazelton (Counsel of Record)
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004
(202) 637-2254
david.hazelton@lw.com
*Counsel for Quantico Tactical Inc.*